IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS ARMISTEAD PHILLIPS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 23-0140-WS-MU |
| ) | |
| **UNITED STATES OF AMERICA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on the motion of the sole remaining defendant ("the Corps") for summary judgment. (Doc. 94). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 93-94, 98-102), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

**BACKGROUND**

According to the amended complaint, (Doc. 48), the Corps operated and maintained a boat launch at Silver Creek Lake Campground ("Silver Creek"). The plaintiff was injured when he fell through a rotten board on a boat dock at Silver Creek ("the Dock"). The Corps "undertook a duty to build, maintain, and repair" the Dock but, through "the negligent and wrongful acts and omissions of a government employee while acting within the course and scope of his employment," the Corps "negligently maintained that boat dock, and allowed a board or boards to become rotten." The single claim against the Corps is for negligence or wantonness. (*Id*. at 1-3).

The amended complaint further alleges that the Corps entered a contract ("the Contract") with the private defendant ("EOM") "for maintenance and repair of the

aforementioned boat dock" and that EOM breached this contract "by failing to maintain the boat [sic] as required by the contract." (Doc. 48 at 3-4).

Both defendants moved to dismiss. The Court granted EOM's motion on the grounds that, as a matter of law, the plaintiff was not a third-party beneficiary of the contract. (Doc. 69). The Court denied the Corps' motion. (Doc. 35). The Corps now seeks dismissal via summary judgment.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608. "If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

Different rules apply when the motion challenges the Court's subject matter jurisdiction. In such a situation, the Court is "permitted to make credibility determinations and weigh the evidence." *Kennedy v. Floridian Hotel, Inc.*, 988 F.3d 1221, 1232 (11th Cir. 2021). Moreover, such a challenge, when raised by way of motion for summary judgment, should be construed as a motion to dismiss. *Hakki v. Secretary, Department of Veterans Affairs*, 7 F.4th 1012, 1023 (11th Cir. 2021).

The plaintiff has filed hundreds of pages of deposition transcript to which he does not cite. This practice violates Civil Local Rule 5(a) ("If discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response."). "A party may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting his position." *Harrison v. Forde*, 2023 WL 35754 at *4 (S.D. Ala. 2023) (citing Eleventh Circuit cases). The Court therefore confines its evidentiary review to those excerpts expressly relied on by the parties in their briefs.

The Corps seeks summary judgment on two grounds: first, that this action is barred by sovereign immunity; second, that, under Alabama law (in particular, its recreational use statutes ("RUS")), the Corps neither owed nor breached any duty to the plaintiff. (Doc. 94 at 1, 29).

**I. Sovereign Immunity.**

The plaintiff's claim against the Corps is brought pursuant to the Federal Tort Claims Act ("FTCA"). (Doc. 48 at 1). As sovereign, the United States is immune from suit unless, and only to the extent that, it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). The FTCA represents a partial waiver of immunity for state tort claims, but courts "must strictly observe the limitations and conditions upon

3

which the Government consents to be sued." *Id*. at 1322 (internal quotes omitted). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." *Id*.

### A. Negligence of EOM.

The FTCA waives sovereign immunity only with respect to the wrongful act or omission "of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). An independent contractor is not an employee of the government for purposes of this provision. *Means v. United States*, 176 F.3d 1376, 1380 (11th Cir. 1999) (explaining *Logue v. United States*, 412 U.S. 521 (1973)); *accord United States v. Orleans*, 425 U.S. 807, 814 (1976). The principle that "the United States may not be held derivatively or vicariously liable for the acts of independent contractors" is known as "the independent contractor exception" to the FTCA. *Phillips v. United States*, 956 F.2d 1071, 1077 (11th Cir. 1992); *accord Dickerson, Inc. v. United States*, 875 F.2d 1577, 1582 (11th Cir. 1989). Whether EOM is an independent contractor depends on the degree of the Corps' control and supervision of EOM's daily activities. *E.g., Means*, 176 F.3d at 1379-80 (explaining *Logue*, 412 U.S. at 527-29). The plaintiff disavows any claim against the Corps based on EOM's acts or omissions. (Doc. 101 at 13-14).

### B. Negligence of the Corps.

A governmental defendant can be "directly liable for its own negligence in carrying out its safety responsibilities," despite the engagement of an independent contractor to perform certain duties, and "the independent contractor exception to the FTCA does not insulate the United States from liability" in such circumstances. *Phillips*, 956 F.2d at 1077-78. In *Phillips*, for example, the plaintiff was injured when scaffolding being used by a contractor in enlarging government airport hangers collapsed due to improper anchorage. The government "was not actively engaged in the construction work," but its "responsibilities ... included assurance of job safety and accident

prevention." *Id*. at 1073.  The contractor was required to submit daily quality control reports, including the results of all safety inspections, *id*., but the government was responsible for reviewing the reports, confirming that the required safety inspections had been performed, and performing additional such inspections of its own, and its liability was properly based on its negligent performance of these retained duties.  *Id*. at 1077.

The Corps seeks summary judgment on the theory that the plaintiff's claims "are barred by the FTCA's independent contractor exception because the Corps delegated [to EOM] all duties and responsibilities related to the inspection, maintenance, and repair of the boat dock."  (Doc. 94 at 29; *accord id*. at 1, 16).  While the independent contractor exception clearly prevents a plaintiff from holding a governmental defendant vicariously liable for the wrongdoing of its independent contractor, some courts have used the same exception to prevent a plaintiff from holding the governmental defendant directly liable for its own wrongdoing when the government has delegated to the independent contractor all duties the plaintiff alleges were breached.[1]  While a claim asserting the governmental entity's vicarious liability for the wrongdoing of an independent contractor fails for lack of subject matter jurisdiction,[2] it is less clear that a claim asserting the governmental entity's direct liability for its own wrongdoing, based on breach of a duty it does not actually owe, fails for lack of jurisdiction rather than on the merits.  Because the Corps, without objection from the plaintiff, treats the issue as a jurisdictional one, (Doc. 94 at 11), the Court does likewise.  The practical effect of this treatment is that, because jurisdictional issues must be resolved before merits issues,[3] the Court addresses

---

[1] *E.g., Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016).

[2] "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit."  *Zelaya*, 781 F.3d at 1322.  Since the independent contractor exception is an "exception to such waiver," *Orleans*, 425 U.S. at 814, a court lacks subject matter jurisdiction when the exception applies.

[3] *E.g., University of South Alabama v. American Tobacco Co*., 168 F.3d 405, 410 (11th Cir. 1999).

5

delegation first, despite the Corps' elevation of the RUS issues to first position in its reply brief.  (Doc. 102 at 1-8).[4]

### 1. Whether the Corps delegated its duties to EOM.

As noted, the Corps argues that it delegated to EOM "all duties and responsibilities related to the inspection, maintenance, and repair of the boat dock." (Doc. 94 at 29).  The amended complaint alleges that the Corps "undertook a duty to build, maintain, and repair" the Dock, and that he was injured on the "negligently maintained" Dock due to the negligence of a Corps employee "in the maintenance and repair" of the Dock.  (Doc. 48 at 1-3).  The amended complaint does not mention "inspection," but the parties treat inspection as part (indeed, the critical part) of the duty and breach alleged.  (Doc. 94 at 1, 12, 16, 17; Doc. 101 at 2-12; Doc. 102 at 1, 10-13). The Court therefore does likewise.

"The law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so." *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir. 1997).  The plaintiff identifies no such law or policy.  The question thus becomes whether the Corps delegated its inspection, maintenance and repair duties to EOM.

A court is to "look to the contract and the parties' actions to determine whether the United States retained some portion of that duty for which it could be held directly liable." *Edison v. United States*, 822 F.3d 510, 519 (9th Cir. 2016).  The parties do not

---

[4] The Court's ordering appears consistent with the approach taken by the Eleventh Circuit in *Phillips*, 956 F.2d at 1077-78, though contrary to that taken by the Ninth Circuit in *Edison*. 822 F.3d at 519 (examining "whether state law ... would impose a duty of care on a private individual in a similar situation" before addressing "whether the United States retained some portion of that duty for which it could be held directly liable").

cite *Edison* for this proposition, but they do follow its formula. The Court therefore does likewise.[5]

The Corps has submitted the Contract, with its incorporated scope-of-work provision. (Doc. 93-5 at 891-1149). The Corps, (Doc. 94 at 3-5), identifies a number of provisions addressing EOM's responsibilities regarding inspection, maintenance and repair on the subject property ("the Property").[6] These include (with emphasis added):

- The scope of work includes "*maintenance and repair* of facilities, buildings, structures [and] site infrastructure," (Doc. 93-5 at 215);
- "The purpose of this contract is to provide and be responsible for the operation, management and planning services, and other items necessary for tasks ... relating to the ... *maintenance* [and] *repair* ... of the Government-owned property [and] facilities," (*id*. at 216);
- "The Contractor shall furnish all labor, equipment, [etc.] necessary for the ... *maintenance* [and] *repair* ... requirements for [the subject] property, facilities and equipment," (*id*.);
- "The Contractor shall be responsible for managing and determining the work required to provide professional *inspection, maintenance* [and] *repair* ... of real property in the most efficient and economical manner ...," (*id*.);
- "The contractor shall be responsible for managing, determining and completing the work required to provide professional *inspection, maintenance* [and] *repair* ... in the most efficient and economical manner ...," (*id*. at 223);

---

[5] Neither party asks the Court to employ any particular rule of construction or other interpretive tool in assessing delegation under the Contract.

[6] As the parties' submitted deposition excerpts make clear, Silver Creek is just one of many discrete areas along the Alabama River between the Cahaba River and Claiborne Dam (a distance of over 100 river miles) that are owned and/or operated by the Corps as "Alabama River Lakes" and subject to the Contract, which areas this opinion identifies collectively as "the Property."

7

- "Services shall be required for the *maintenance and repair* of all project facilities, building, building systems, and structures," (*id.* at 253);
- "The contractor shall *maintain and repair* existing ... docks ...," (*id.*);
- "Services shall include but not be limited to, all work associated with painting or *repair*, ... *inspections*, ... *repairs*, ... and *repair*/replacement of said facilities, buildings [and] structures ...," (*id.*);
- "[T]he Contractor is responsible for satisfactory performance of all work ...," (*id.* at 134);
- "Notwithstanding any of the provisions contained herein or elsewhere in this contract, the Corps of Engineers project personnel are *not authorized to direct the Contractor* in any manner changing the requirements of the contract," (*id.* at 171);
- "The Government *shall not exercise any supervision or control over Contractor employees* performing services under this contract." (*Id.* at 173).

It is plain from these provisions that the Contract delegates to EOM all of the Corps' responsibilities for maintenance and repair of the Property, including the Dock. The plaintiff makes no serious argument to the contrary.[7]

These provisions likewise clearly delegate to EOM the responsibility for inspecting the Property, including the Dock, for items needing maintenance or repair.[8]

---

[7] The plaintiff's only argument is the demonstrably incorrect assertion that the Court "has already determined that the contract with East did not delegate all responsibility to East" and that it has "found that the Corps retained responsibilities with respect to maintenance and repair." (Doc. 101 at 6, 7). On the contrary, the Court ruled that "the precise scope (or even the existence) of the Corps' retained responsibilities need not be determined" in order to resolve the Corps' motion to dismiss. (Doc. 35 at 5).

[8] In addition, the Corps presents the declaration of an avowed expert in the field of government contracting, who opines that EOM "was responsible for the inspection, maintenance, and repair of the boat dock at Silver Creek Lake." (Doc. 93-7 at 8; Doc. 94 at 5). The plaintiff does not object to consideration of this evidence.

8

The plaintiff, pointing to other contractual provisions, witness statements, and the conduct of the Corps and EOM, argues that this apparent delegation of inspection responsibility did not actually occur. (Doc. 101 at 2-13).

The plaintiff relies on four contractual provisions. (Doc. 101 at 2-3). The first says merely that EOM will periodically pressure wash docks pursuant to work orders issued by the Corps. (Doc. 93-5 at 259). The plaintiff does not explain, and the Court does not perceive, how this provision could, much less does, reflect that the Corps retained a duty to inspect the Dock for safety hazards.

The second provision states that the Corps may give "technical direction" to EOM, with the term "defined as that process by which the Contractor receives guidance and approvals in his technical effort as it relates to an element of work or task solely within the existing requirements of the contract as a result of technical review of the Contractor's work by the Corps of Engineers project personnel." (Doc. 93-5 at 171). Again, the plaintiff simply quotes the provision without explaining how it could suggest the Corps retained a duty to inspect the Dock, and the Court will not engage in guesswork on his behalf.

The third provision describes a "coordination meeting" to occur before EOM commences work under the Contract, its purpose being "to develop a mutual understanding" of, *inter alia*, "the interrelationship of the Government's inspection system to the Contractor Quality Control (CQC) Plan." (Doc. 93-5 at 222). The plaintiff declares without amplification that this language "make[s] clear that [the] Corps has an inspection plan for these premises," (Doc. 101 at 3), but he offers no support for his assumption that "inspection system" refers to a responsibility to inspect for the purpose of identifying hazards for EOM to address as opposed to (as its association with "quality control" suggests) a right to inspect for the purpose of evaluating the quality of EOM's

9

work.[9]  Absent such support, he is either engaging in speculation or asking the Court to develop a defensible rationale on his behalf.  Neither avenue is permissible.

The fourth and final contractual provision on which the plaintiff relies reads as follows:

> *Determination of all work* (reoccurring and non-reoccurring) *required for keeping all areas listed in a safe*, properly functioning and a pleasing appearance of all property [sic], ... including, but not limited to, ... boat docks .., *shall be the responsibility of the Contractor*.  However, *if the Contracting Officer* or [their representative] *notes any deficiency, they may direct the Contractor to perform the needed repairs* and the Contractor shall respond promptly and complete such repairs at the earliest possible time.
>
> The Contractor shall also, along with Corps of Engineers (COE) personnel, identify re-occurring and non-reoccurring work items/packages that require Repair, Maintenance, Sustainment, Restoration and Modernization as defined in AR 420-1 and DA PAM 420-11.
>
> Typical items ... can include work to meet current safety, maintenance requirements ....  However, *if the Contracting Officer* or [their representative] *notes any deficiencies that include this re-occurring or non-reoccurring work that requires repair, maintenance, sustainment or restoration they may direct the Contractor to perform the needed work* and the Contractor shall respond promptly and complete the indicated work at the earliest possible time with all available resources allowed under this Contract.  *The Contractor shall take continuing action to avoid such deficiencies being detected* by the [representative] as such deficiencies may be counted against the Contractor as unsatisfactory performance.

(Doc. 93-5 at 223-24 (emphasis added)).

Although it does not mention "inspection," the plaintiff posits - once again without explanation - that this provision "indicates that the Corps will inspect the property and direct East's work." (Doc. 101 at 2).  The Corps presumably cannot note a deficiency needing maintenance or repair unless it is aware of the deficiency, but such awareness

---

[9] The plaintiff does not assert a duty to inspect EOM's work but only a duty "to inspect ... for defects in the premises."  (Doc. 101 at 2; *accord id*. at 9, 11).

need not derive from an inspection undertaken for that purpose.[10]  Since it does not speak of inspections, all this provision clearly accomplishes is to permit the Corps to direct EOM to address, sooner than EOM otherwise would have done so, hazards of which the Corps becomes aware, while leaving EOM responsible for detecting and remedying such deficiencies.

His contractual arguments exhausted, the plaintiff offers two seemingly broad statements by witnesses.  (Doc. 101 at 2).  First, he quotes the declaration of EOM's president and chief operating officer for the proposition that the Corps "had primary responsibility over the property on which Plaintiff claimed to sustain an injury."  (Doc. 20-1 at 3).  This brief, vague statement was made eighteen months ago in the middle of a five-page declaration, the purpose of which was only to support EOM's motion to set aside entry of default.  The statement unremarkably confirms that the Corps, as landowner, had primary responsibility over the Property, without remotely suggesting that the Corps had not delegated to EOM any duty to inspect for safety hazards.

The plaintiff also quotes a park ranger's deposition testimony for the proposition that "[a]t Silver Creek, the Corps maintains the boat ramp."  (Doc. 98-2 at 7, 56).  This quotation is even more misleading than the first.  The witness was asked about a map identifying a number of boat launches along the Alabama River waterway - some private, others operated by a city, a county, or the Corps.  (*Id*. at 53-56).  The witness agreed with plaintiff's counsel that "when it says it's county operated, that means that they have responsibility for the boat ramp itself" and that when "some of these say city operated," "[t]he City maintains that."  (*Id*. at 56).  When the witness then agreed that " [a]t Silver Creek, the Corps maintains the boat ramp," (*id*.), he obviously confirmed only the distribution of responsibility as between the Corps and the operators of other launches, not as between the Corps and EOM.

---

[10] Such awareness could arise, for example, from a third-party report, from a Corps employee stumbling upon the deficiency, or even from the passage of time.

11

Turning to the Corps' conduct, the plaintiff cites four rangers' testimony regarding their actual actions. According to the plaintiff, the rangers testified that they are trained to identify hazards, that they conduct patrols, that they "perfor[m] inspections while on patrols," that they fill out "inspection reports," and that they respond to observed hazardous conditions by closing the area and/or placing a work order for the condition to be fixed. (Doc. 101 at 3-6, 7, 9-10).

The Court can confirm there is evidence: that the rangers receive annual hazard identification training "[f]or specific [but unidentified] things," (Doc. 99-2 at 43); that rangers conduct patrols on the weekends, focusing on sites within the Property more frequented by the public than is Silver Creek, (Doc. 98-3 at 14-15; Doc. 99-2 at 19, 21-22); that these patrols are generally done while driving, with walking usually reserved for interacting with campers and other Property users, (Doc. 93-3 at 7; Doc. 98-3 at 12-13; Doc. 99-2 at 19, 21); that the patrols are to check on Property users and to look for "glaring public safety issues," (Doc. 98-3 at 11-12); and that, if they see such a condition, they will call or email it in to another ranger (resulting in creation of a work order for EOM) and, depending on the severity of the condition, may also flag off the area. (Doc. 98-3 at 12-13; Doc. 99-2 at 22-24).

Notably missing from the plaintiff's evidence is any testimony that the rangers perform "inspections"; instead, they report what they "notic[e]." (Doc. 93-3 at 8, 9; Doc. 99-2 at 23).[11] The paradigmatic hazards reported by the rangers are downed trees, (Doc. 93-3 at 8; Doc. 98-3 at 12), and potholes in the road, (Doc. 99-2 at 29), which are observable from their vehicles. A ranger would not inspect a bathroom, even if using it, but would report a door ripped off if he noticed it. (Doc. 93-3 at 9). While some rangers have been on various docks within the Property (including the Dock) episodically over a span of years, this has generally been for the purpose of communicating with visitors on

---

[11] The rangers do fill out "inspection reports," but the only such report addressed by the plaintiff focuses on the people and vehicles observed at the various sites. (Doc. 93-8 at 2). This does not constitute an "inspection," as the plaintiff labels it, (Doc. 101 at 6), in any sense relevant to this lawsuit.

the dock.  (Doc. 98-3 at 13; Doc. 99-2 at 19, 22, 29).  As plaintiff's counsel accurately phrased it, the rangers' training is "something like, if you see something, say something," which is simply "common sense."  (Doc. 99-2 at 43).

To "inspect" is to "view closely in critical appraisal,"[12] to "examine carefully and critically, especially for flaws."[13]  The plaintiff's evidence does not remotely approach the outermost limits of this definition.

The bottom line is this:  There is no inconsistency, especially in the context of a governmental parkland open to the public, in delegating the *responsibility* to *inspect* property and *detect* safety hazards while simultaneously retaining the *right* to *notice* and *point out* obvious hazards.  The plaintiff's evidence of the latter therefore does nothing to undermine the plain contractual evidence of the former.

Finally, with respect to EOM's conduct, the plaintiff asserts that a ranger testified he "has never heard of East doing any type of safety inspections on the Alabama River Lakes premises."  (Doc. 101 at 5).  The plaintiff articulates no argument based on this testimony, but he apparently means to suggest that, if EOM was not actually performing inspections, the Corps must be responsible for performing them.

Assuming without deciding that the plaintiff's implicit argument is legally and logically plausible, the witness testified that he is not in a position to know whether EOM performs inspections, so his ignorance is not evidence of EOM's failure to inspect.  (Doc. 99-1 at 39-40).  The actual evidence is that a ranger who *was* in a position to know has seen EOM doing inspections hundreds of times.  (Doc. 99-2 at 38-39).  Moreover, the plaintiff does not acknowledge the material created by EOM and discussed by the Corps in its principal brief, (Doc. 94 at 5-7), which addresses the vast extent of EOM's inspection obligations and even incorporates detailed checklists created by EOM for its use in inspecting the Property (including one focused on docks and similar facilities, with

---

[12] Merriam-Webster's Online Dictionary (last accessed February 13, 2025).

[13] American Heritage Dictionary 908 (5th ed. 2011); *accord* Webster's New College Dictionary 588 (3rd ed. 2008).

13

27 line items to be checked).  (Doc. 93-5 at 3, 266-67, 273-89, 305, 312).  There is, in short, no evidence before the Court that EOM did not perform inspections and thus no basis to suspect that the Corps, rather than EOM, was responsible for doing so.

In summary, the Corps retained no duty of inspection, maintenance or repair, the breach of which could support a claim against it under Alabama law for negligence or wantonness.[14]

### 2.  Whether Alabama law precluded the Corps' effective delegation to EOM.

Within the Eleventh Circuit, "[t]he governmental agency may ... be liable to third parties for its own negligence in discharging a nondelegable duty imposed under state law."  *Dickerson*, 875 F.2d at 1582.  Thus, "even if it appears that the government delegated all of its duties to the independent contractor, we ask whether [state] law imposed any *nondelegable* duties on the government."  *Edison*, 822 F.3d at 519 (emphasis in original).

The plaintiff, citing *Borden v. Consumer Warehouse Foods, Inc.*, 601 So. 2d 976 (Ala. 1992), asserts that Alabama law imposes on a landowner a nondelegable duty to maintain its premises in a reasonably safe condition, which he assumes encompasses his allegations of negligence regarding inspection, maintenance and repair.  (Doc. 101 at 7-8).  Absent cogent analysis of *Borden*, which the plaintiff does not provide, the Court cannot agree that it stretches so far as he claims.

"The duty to warn invitees of a dangerous condition on the premises, if invitees are permitted to use the premises, seems to be a duty that the law would not permit the storekeeper to delegate."  *Borden*, 601 So. 2d at 979.  Two important observations emerge:  First, *Borden* does not state that the nondelegable duty extends to maintaining premises in a reasonably safe condition, but only to warning of a dangerous condition rendering the premises unsafe.  Second, *Borden* does not state that the duty extends from any landowner to any land user, but only that it extends from a storekeeper to an invitee,

---

[14] The same conclusion obtains whether weighing the evidence, as in a jurisdictional challenge, or looking for a genuine issue of material fact, as in a merits challenge.

14

or business invitee.[15]  The plaintiff identifies no authority expanding *Borden* beyond these parameters.

As to duty, the amended complaint does not allege a failure to warn but only a failure to maintain and repair.  As to status, the Corps is not a shopkeeper, and the plaintiff was not a business invitee.[16]  For both reasons, *Borden* does not apply here, and the Corps' delegation to EOM is not negated or neutralized by non-delegability under state law.

## CONCLUSION

For the reasons set forth above, the Corps' motion for summary judgment, construed as a renewed motion to dismiss, is **granted**.  All claims against the Corps are **dismissed**.  No further order will be forthcoming from the Court except upon application by any party for final judgment as prescribed by Rule 58.

DONE and ORDERED this 14th day of February, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[15] A business invitee is one on the premises "for some purpose that materially or commercially benefit[s] the owner or occupier of the premises." *South Alabama Brick Co. v. Carwie*, 214 So. 3d 1169, 1175-76 (Ala. 2016) (internal quotes omitted).  "A store patron is generally considered a business invitee for premises-liability purposes under Alabama law." *Blalock v. Wal-Mart Stores East, LP*, 2007 WL 1412445 at *1 (M.D. Ala. 2007).  Because Silver Creek is open to the public and free of charge, (Doc. 93-1 at 3), the Corps derived no material or commercial benefit from the plaintiff's presence.

[16] The plaintiff suggests he was a "public invitee." (Doc. 101 at 17).  As his own authority makes plain, a public invitee is not a business invitee. *Cotten v. St. Bernard Preparatory School*, 20 So. 3d 157, 160 (Ala. Civ. App. 2009).  In any event (and contrary to the plaintiff's assertion), the Alabama Supreme Court has declined to recognize "public invitee" as a category for purposes of premises liability analysis. *Hambright v. First Baptist Church-Eastwood*, 638 So. 2d 865, 867 (Ala. 1994).

15